USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/21/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

OORAH, INC.,

       Plaintiff,

   -v-

KANE KESSLER, P.C., GERARD SCHIANO-STRAIN,
ESQ, BIRCH COMMUNICATIONS, INC., RONALD
KUZON and JOHN DOES 1-10,

       Defendants.

------------------------------------------------------------X

17 Civ. 7175 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

  A non-profit entity, Oorah, Inc. ("Oorah"), in the midst of litigation in the New York courts, has brought suit here against one of its state-court adversaries, Birch Communications, Inc. ("Birch"); that adversary's state-court counsel, Kane Kessler P.C. ("Kane Kessler") and Kane Kessler lawyer Gerard Schiano-Strain ("Schiano-Strain," and with Kane Kessler, "Kane Kessler"); and Ronald Kuzon, the general counsel of Birch's state-court co-defendant, Covista Communications, Inc. ("Covista"). Oorah here alleges that Birch and Covista conspired with Kane Kessler to forestall litigation in the state-court action, gin up a sham sale of assets from Covista to Birch, falsify invoice records, and destroy evidence, all in an effort to prevent Oorah from collecting on debts that Covista owed it. Litigation in New York State Supreme Court between Oorah and Covista is ongoing.

  Oorah here brings fraudulent conveyance claims, a claim for breach of fiduciary duty, and a claim under Section 487 of the New York Judiciary Law—for malfeasance by attorneys—

1

against each defendant. Defendants have moved to dismiss. For the reasons explained below, the Court dismisses Oorah's complaint in its entirety.

I.  Background

A.  Facts[1]

Oorah is a New Jersey non-profit corporation "whose mission is to provide children and their families opportunities to become productive and engaged members of their communities." Compl. ¶¶ 5, 13. Covista, Oorah's state-court adversary, was a telecommunications company that provided, among other things, long-distance and calling-card phone services. *See id.* ¶ 14. Oorah raised money by, among other things, marketing Covista's services to members of the Orthodox Jewish community in New York, New Jersey, and Connecticut. *Id.* Pursuant to a 2004 agreement between Oorah and Covista (the "Agency Agreement"), Covista paid a commission to Oorah for customers referred by Oorah. *Id.*

---

[1] The Court's recitation of the facts is drawn from the Complaint, Dkt. 1 ("Compl."). For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts in the Counterclaim to be true and draws all reasonable inferences in favor of plaintiffs. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

The Court also considered documents attached to the declaration of Harold K. Gordon, Dkt. 27, which include documents filed in the New York state action. Because these documents were incorporated by reference they are properly considered on a motion to dismiss. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) (in resolving a motion to dismiss, the court may consider, *inter alia*, "any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit") (citation omitted). The Court considered these documents "not for the truth of the matters asserted therein," but only "for the fact that the statements were made." *Clark v. Kitt*, No. 12 Civ. 8061 (CS), 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014); *see also, e.g., Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents.") (emphasis omitted).

2

In 2009, however, Covista, fell behind on its commission payments. *Id.* ¶ 15. For the next year or more, Oorah sought payments from Covista, without success. *Id.* ¶¶ 15–16. In August 2011, Covista took the first steps in what Oorah describes as a "tripartite scheme" to frustrate Oorah's collection of these payments, *id.* ¶ 17, which allegedly worked like this: First, Kuzon would create fake invoices purporting to show that Oorah owed Covista amounts that more than offset the commissions Covista owed to Oorah. *Id.* Second, Covista would destroy the records showing how much it owed to Oorah. *Id.* And third, Covista would frustrate Oorah's attempts to collect on its commissions by either relying on the fake invoices to offset the commissions or by selling off its assets and dissipating the proceeds before Oorah could enforce a judgment against it. *Id.* Oorah alleges Covista, Kuzon, Birch, and Kane Kessler did just that.

On August 9, 2011, Kuzon sent to Oorah's counsel two invoices, dated August 8, 2011, purporting to invoice Oorah more than $800,000. *Id.* ¶ 18. These invoices arose under Covista and Oorah's then-superseded 2001 contract, the "Reseller Agreement." *Id.* For the following year, Covista continued to send Oorah additional invoices under that 2001 agreement. *Id.* Oorah refers to these invoices as the "Newly Created Invoices." *Id.*

On August 18, 2011, Covista brought suit on the Newly Created Invoices in Tennessee Chancery Court. *Id.* ¶ 19. That suit was eventually dismissed for lack of personal jurisdiction. *Id.*

On August 19, 2011, Oorah instituted an action in New York Supreme Court in Manhattan, *Oorah, Inc. d/b/a Cucumber Communications v. Covista Communications, Inc.*, Index No. 652316/11 (Sup. Ct. N.Y. Cnty. 2011) (the "New York Action"). *Id.* ¶ 20. On October 21, 2011, Kane Kessler appeared on behalf of Covista in the New York Action. *Id.* In that action, Covista asserted counterclaims seeking payment on the Newly Created Invoices. *Id.*

3

Over the next several months, Oorah alleges, Covista and Kane Kessler ignored Oorah's requests for documents substantiating the Newly Created Invoices. *See id.* ¶¶ 20–25. Then, on April 20, 2012, Covista moved to dismiss the New York Action on forum *non conveniens* grounds. *Id.* ¶ 26. In its motion papers, Covista represented that it did not have an office in New York. *Id.* ¶ 27. In a July 16, 2013, decision, the New York court denied that motion, finding that Covista *did* maintain a New York office. *Id.* Oorah now alleges that Covista and Kane Kessler knew that Covista had a New York office and intentionally misrepresented that fact to the New York court. *Id.* ¶ 28.

In January 2013, Oorah became aware that Covista was considering a sale of certain of its assets to Birch. *Id.* ¶ 31. Oorah sought to depose Covista about that transaction. *Id.* On March 15, 2013, Oorah's counsel deposed Kuzon, who testified that he did not know when, if ever, the asset sale would close. *Id.* ¶ 33. On March 26, 2013, Birch acquired all of Covista's assets for $4 million. *Id.* Oorah then amended its complaint in the New York Action to add Birch as a defendant as Covista's successor. *Id.*

In a September 2, 2014 decision, the New York State Supreme Court dismissed Oorah's claims against Birch. It held that Covista's liabilities—including any liability to Oorah—remained with Covista. *Id.* ¶ 35. That decision was affirmed on appeal. *Id.* But, Oorah now alleges, Kane Kessler misled the New York court by representing that Covista continued to exist when, in fact, Covista lacked assets sufficient to satisfy the debts it owed Oorah. *Id.* ¶ 36.

In the New York litigation, Oorah alleges, Covista also failed to comply with its discovery obligations. *See id.* ¶¶ 37–40. In particular, Covista failed to search its records for evidence substantiating the Newly Created Invoices. *See id.* ¶ 40. In response to Oorah's motion to compel, the state court ordered Covista to produce a "Jackson Affidavit" as to the

4

efforts it undertook to search for these records. In a September 18, 2013 affidavit, Covista's representative Tamie Morgan affirmed that Covista had failed to conduct a search of electronically stored information (ESI). *Id.* ¶ 42. On December 20, 2013, the state court ordered Covista to conduct such a search. *Id.* ¶ 43.

On December 9, 2014, nearly a year later, Kane Kessler disclosed that it had not conducted a search for ESI on Covista's servers, that Covista had transferred that data to Birch, and that Birch had destroyed the data (despite having been, during part of the relevant period, a party to the New York action). *Id.* ¶ 43.

After the parties cross-moved for summary judgment in the state court, the court granted Oorah summary judgment as to liability on its claims under the Agency Agreement. *Id.* ¶ 52. The court also held that Covista had spoliated evidence and, as a remedy, granted Oorah an adverse inference during the forthcoming damages trial. *Id.* On Covista's counterclaim, the state court granted Covista judgment of $2,617,362.13. *Id.* Oorah appealed that decision and posted an undertaking during the pendency of the appeal to prevent enforcement of the judgment. *Id.* ¶ 53. On appeal, the First Department Appellate Division reversed and dismissed Covista's counterclaims. *Id.* The First Department also awarded costs to Oorah, *id.*, which Oorah has been unable to collect, *id.* ¶ 54.

After the First Department's decision, Kane Kessler moved to withdraw as counsel for Covista. *Id.* ¶ 55. Oorah opposed that motion. *Id.* ¶ 56. On June 27, 2017, the state court granted Kane Kessler's motion to withdraw and gave Covista until July 6, 2017, to retain new counsel. *Id.* ¶ 57. On July 6, 2017, Kuzon appeared on behalf of Covista but, because he was not licensed to practice in New York, was not allowed to be heard. *Id.* ¶¶ 58–59.

### B. Procedural History of This Action

On September 20, 2017, Oorah filed its complaint in this Court. Dkt. 1. The Complaint asserts four causes of action against all defendants: (1) a violation of New York Judiciary Law § 487; (2) fraudulent conveyance; (3) fraudulent conveyance under New York Debt & Creditor Law § 273-a; and (4) breach of fiduciary duty.

On November 17, 2017, Birch moved to dismiss the complaint, Dkt. 26, and filed the declaration of Harold K. Gordon, Dkt. 27 ("Gordon Decl."), and a memorandum of law, Dkt. 28 ("Birch Br."), in support. That same day, Kane Kessler also moved to dismiss, Dkt. 29, and filed a declaration, Dkt. 31, and memorandum of law, Dkt. 30 ("KK Br."), in support.

On December 22, 2017, Oorah filed its brief in opposition to both motions, Dkt. 39 ("Oorah Br."), and the declaration of Casey J. Hail in support, Dkt. 40.

On January 26, 2018, Birch, Dkt. 48 ("Birch Reply Br."), and Kane Kessler, Dkt. 52 ("KK Reply Br."), submitted their reply briefs.

On February 5, 2018, Kuzon added his own motion to dismiss. *See* Dkts. 54–57. On February 26, 2018, Oorah filed its brief in opposition. Dkt. 63. On March 9, 2018 Kuzon filed his brief in reply. Dkt. 67.

## II. Legal Standard on a Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlements to relief." *Twombly*, 550 U.S. at 558. Although the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

### III. Analysis

In their respective briefs, Birch, Kane Kessler, and Kuzon advance several arguments for the dismissal of Oorah's complaint. In the discussion that follows, the Court addresses some of those arguments. The Court concludes that, as to each of the complaint's four counts, at least one ground for dismissal advanced by defendants is meritorious.

#### A. Count I: Section 487

In Count I, Oorah seeks to hold the defendants liable under New York Judiciary Law § 487 for misrepresentations Oorah alleges Kane Kessler made during the New York litigation. Section 487 provides that any "attorney or counselor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" or who "[w]ilfully delays his client's suit with a view to his own gain" may be held liable by the "party injured" for "treble damages, to be recovered in a civil action." *Id.*

Defendants argue that this claim—like all the others—is barred by the doctrine of *res judicata* because it was (or could have been) raised in the state court proceedings. But on the Court's review, whether Oorah's claim under Section 487 must be dismissed under New York's *res judicata* doctrine presents a difficult question of state law, the resolution of which is unnecessary to the resolution of this motion. Oorah contends that claim preclusion cannot bar a claim that arises after the commencement of the prior action. But at least as regards claims under Section 487, New York law is, apparently, not so categorical. *See Gillen v. McCarron*, 6

7

N.Y.S.3d 253, 254 (2nd Dep't 2015) (applying *res judicata* to bar Section 487 claims where plaintiff had been "aware of the alleged violations of Judiciary Law § 487 when they occurred, and had addressed most of them in the course of making applications for sanctions against the defendants in the prior actions and proceedings"). At the same time, New York case law also provides that *res judicata* will *not* bar a Section 487 claim where, in the previous action, the plaintiff merely made a "motion to strike defendants' pleadings. . . on the basis that [the pleading at issue] was a fabrication" because "a motion is not a cause of action, but rather, is a request for relief." *Melcher v. Greenberg Traurig LLP*, 24 N.Y.S.3d 249, 255 (1st Dep't 2016). There is, therefore, an apparent division of authority within the New York courts, or at least a lack of clarity, as to the *res judicata* effect of a prior decision on a later action under Section 487 for misconduct that occurred in that prior action.

This Court need not resolve whether *res judicata* bars Oorah's Section 487 claims because those claims must be dismissed for two other, independent reasons.

First, as to Birch, this cause of action fails to state a claim because Birch is not a lawyer, and only lawyers may be held liable under Section 487. *See Vayani v. 146 W. 29th St. Owners Corp.*, No. 16-CV-1774 (JGK), 2017 WL 3476046, at *8 n.11 (S.D.N.Y. Aug. 11, 2017), *aff'd*, 726 F. App'x 71 (2d Cir. 2018); *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 376 (S.D.N.Y. 2014) ("[C]lients may not be held derivatively liable under the statute for the misconduct of their counsel.").

Second, as to all defendants, this claim must be dismissed because it fails to allege a fraudulent scheme greater in scope than the issues adjudicated in the New York proceeding. *See Specialized Indus. Servs. Corp. v. Carter*, 890 N.Y.S.2d 90, 92 (2nd Dep't 2009). Distinct from the doctrines of claim or issue preclusion, New York law requires that claims under Section 487

8

be brought in the underlying action where the attorney misconduct occurred, unless the misconduct is part of a broader fraudulent scheme. *See id.*; *Little Rest Twelve, Inc. v. Zajic*, 27 N.Y.S.3d 142, 143 (1st Dep't 2016). Oorah's complaint, however, does not plausibly allege a scheme broader than the alleged misrepresentations, omissions, and delay tactics defendants allegedly engaged in before the state court.[2] Rather, the events underlying this claim took place, as alleged, entirely within the scope of that litigation. As Oorah alleges here, and as it details in its briefing, Kane Kessler lied to the state court about whether its client, Covista, had a New York office, which delayed proceedings in that court; lied to the state court about having produced all relevant documents; permitted Covista and Birch to destroy evidence; and misled the state court as to whether Covista was judgment proof. *See* Compl. ¶¶ 3, 27–29, 36, 38–44. But Oorah's complaint "contains no nonconclusory allegations that the alleged misconduct was . . . a means to the accomplishment of a larger fraudulent scheme greater in scope than the issues determined in the prior proceeding." *Little Rest Twelve*, 27 N.Y.S.3d at 143. "Thus, the claim is not properly asserted in this action but would be appropriately raised in the still pending underlying action, where the alleged misconduct occurred." *Id.*[3] Accordingly, Oorah must bring

---

[2] In its brief in opposition to Kane Kessler's and Birch's motions to dismiss, Oorah, for the first time, states that the defendants were participants in a "conspiracy" to defeat Oorah's state-court lawsuit. *See* Oorah Br. at 5–16. But the Court will not consider allegations first raised in a brief. In any event, these conclusory allegations do not expand the scope of the allegedly fraudulent acts beyond the underlying state court action. *See id.*

[3] The decision of the First Department in *Melcher*, 124 N.Y.S.3d 249, on which Oorah relies for the proposition that its claim need not be brought in the state court proceeding, is inapposite. In *Melcher*, the plaintiff sought *only* to recover for legal fees incurred as a result of the defendants' alleged deceit. *See id.* at 256. Here, by contrast, Oorah seeks to hold defendants liable for Oorah's purported inability to enforce the judgment against Birch and Covista. Where a plaintiff "seek[s] to collaterally attack any prior adverse judgment or order on the ground that it was procured by fraud . . . the appropriate remedy generally [is] to seek vacatur under CPLR 5015." *Id.*

this claim before the state court—where the action remains pending—and not here. *Id.*; *see Seldon v. Bernstein*, 503 F. App'x 32, 33 (2d Cir. 2012).

### B. Counts II and III: Fraudulent Conveyance

In Counts II and III, Oorah brings claims for fraudulent conveyance under New York law, including, in Count III, New York Debtor & Creditor Law § 273-a.

Count II's fraudulent conveyance claim does not specify a statutory basis, although Oorah asserts that this claim encompasses two theories of liability: actual and constructive fraud.[4] *See* Oorah Br. at 29. Count III arises under Section 273-a, which provides:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y. Debt. & Cred. Law § 273-a.

The doctrine of *res judicata* clearly bars Oorah's fraudulent conveyance claims. "[T]he doctrine of *res judicata*, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.'" *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (quoting *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)). "Res judicata thus not only bars parties from relitigating the same cause of action, but also 'prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was

---

[4] *See Spanierman Gallery, PSP v. Love*, 320 F. Supp. 2d 108, 113 (S.D.N.Y. 2004) ("There are two types of fraudulent conveyance claims under New York law, distinguished as conveyances which are actually fraudulent, *see* N.Y. Deb. & Cred. Law § 276, and those which are constructively fraudulent, *see id.* § 273.").

10

raised.'" *Harborside Refrigerated Servs., Inc. v. Vogel*, 959 F.2d 368, 372 (2d Cir. 1992) (quoting *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir. 1985)).[5]

"[I]nvocation of" either "res judicata [or] collateral estoppel 'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.'" *Kremer*, 456 U.S. at 467 n.6 (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "When a state court has adjudicated a claim or issue, these doctrines also serve to 'promote the comity between state and federal courts that has been recognized as a bulwark of the federal system.'" *Id.* (quoting *Allen*, 449 U.S. at 96).

This Court, sitting in diversity, must apply the "preclusion law of the rendering state," *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 193 (2d Cir. 2008) (internal quotation omitted). This Court must "give the same preclusive effect to" the judgment of the New York decision that that decision "would be given in the courts of the State from which the judgment[] emerged," *Kremer*, 456 U.S. at 467.

Under New York's claim preclusion doctrine, "a 'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Giannone*, 548 F.3d 191, 193 (2d Cir. 2008) (quoting *Maharaj*, 128 F.3d at 97). Under this doctrine, "the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj*, 128 F.3d at 97. "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier

---

[5] The doctrine of collateral estoppel—issue preclusion— is distinct, but similar, and not germane here. "Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982); *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 & n.5 (1979).

11

suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also present in the first." *Id.*

Applying these principles, Oorah's fraudulent conveyance claims in this suit are barred by the litigation in state court. There is no genuine dispute that the action in state court resulted in a final judgment on the merits. *See Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009). And the fraudulent conveyance claims asserted here stem from an issue squarely presented in the state court proceedings: whether the transfer of assets from Covista to Birch, and the ensuing transfer of cash from Covista to others, was fraudulent. Oorah explicitly asserted, as a matter of fact, a fraudulent conveyance before the state court. And it clearly could and should have pursued there, on these facts, a fraudulent conveyance claim. Specifically, Oorah alleged in the state court that Covista had sold its assets to Birch for the purpose of "fraudulently avoiding its obligations to Oorah." *See* Gordon Decl., Ex. G (State Court Second Amended Complaint) ¶ 38 ("Covista undertook the Transaction for the purpose of fraudulently avoiding its obligations to Oorah and, upon information and belief, other creditors."). This conveyance was at the center of the "transaction" at issue in the state-court litigation. Oorah brought the state action seeking payment on Covista's allegedly untimely commission payments. Oorah then amended its complaint to claim that Birch was liable for Covista's liabilities. Birch's liability *vel non* for Covista's obligations was central to that litigation. Oorah thus clearly could have raised a claim for fraudulent conveyance in the state court action. Accordingly, Counts II and III are barred as *res judicata*.

These claims are independently deficient, requiring dismissal, for other reasons. As to Kane Kessler and Kuzon, no claim for a fraudulent conveyance may lie because Kane Kessler and Kuzon are not alleged to be either the transferor or transferee of the alleged fraudulent

conveyance. *See FDIC v. Porco*, 552 N.Y.S.2d 910, 911 (1990). That Oorah now, in its briefing, styles Kane Kessler and Kuzon "conspirators" does not change that analysis.

Nor has Oorah adequately pled the elements of a fraudulent conveyance claim. Most blatantly, Oorah has not plausibly alleged that the money Birch paid for Covista's assets—some $4 million—was insufficient consideration for those assets. The complaint's allegations on this score are entirely conclusory. *See, e.g.*, Compl. ¶ 67.

### C. Count IV: Fiduciary Duty

Finally, in Count IV, Oorah alleges that, because Covista was insolvent at the time that it transferred its assets to Birch, Covista's officers and directors—including Kuzon—owed fiduciary duties to its creditors, including Oorah. *See* Compl. ¶ 80. Kuzon breached this duty, the complaint alleges, by allowing Covista to become judgment proof (through the sale of its assets to Birch). *Id.* ¶ 81. Birch and Kane Kessler, the complaint alleges, aided and abetted Kuzon's breach of his fiduciary duty, for which they, too, are liable. *Id.* ¶ 82.

Here, too, litigation in the state court precludes Oorah's pursuit of this claim here. Again, the facts giving rise to Oorah's claim stem from the very transactions underlying the action it brought in state court: Covista's failure to pay Oorah the commissions it owed and its sale of assets to Birch. Just as Covista's sale of assets to Birch underlies Oorah's fraudulent conveyance claim—and just as that claim is barred by *res judicata*—so, too, does the sale of those same assets underlie Oorah's claim for breach of fiduciary duty. That this claim could have been asserted in the state court action is underscored by the fact that Oorah *did* bring a claim for breach of fiduciary duty in that action against Covista. The facts underlying the breach of fiduciary duty claim asserted here are the same that gave rise to the earlier claim.

13

Again, there are alternative bases for dismissal of this claim. Oorah has inadequately pled the elements of this claim, too. Most notably, it has not alleged, other than conclusorily, that Covista was insolvent; absent such insolvency, no fiduciary duty would have arisen. *Cohain v. Klimley*, No. 08-CV-5047 (PGG), 2010 WL 3701362, at *21 (S.D.N.Y. Sept. 20, 2010) ("Under New York law, creditors are owed a fiduciary duty by officers and directors of a corporation only when the corporation is insolvent.") (internal quotation omitted); *Innovative Custom Brands, Inc. v. Minor*, No. 15-CV-2955 (AJN), 2016 WL 308805, at *5 (S.D.N.Y. Jan. 25, 2016) (same). Oorah's only allegation to that effect is the conclusory assertion that "Covista was insolvent at the time of its transfer of assets to Birch, if not earlier." Compl. ¶ 79.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss. Because Oorah elected to oppose defendants' motions to dismiss rather than amend its complaint, and because the Court finds that any amendment of the claims pled here would be futile, the Court dismisses Oorah's complaint with prejudice.[6]

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 21, 2018
New York, New York

---

[6] Kane Kessler, Dkt. 32, and Kuzon, Dkt. 59, requested argument on their motions; the Court has found it unnecessary to hold argument. The Clerk of Court is respectfully directed to close those motions.